## WHATCHEER BANK *v.* EDWARD J. CUSHING.

An agreement by the holders of a promissory note to release the indorser of it, upon condition of something to be done by the maker, cannot avail the indorser in defence to an action against him on the note, as a release by way of equitable estoppel, unless the condition, in the fair sense of the agreement, has been fully performed by the maker, although the non-performance of the condition is in no way chargeable upon the indorser.

Where a bank holding an indorsed note, agreed with the maker and the indorser, that if the former, who had stopped payment, would prefer its claims against him, including the note, in the first class of his assignment, with other banks, it would release the indorser, and the maker put the claims of the bank nominally in the first class of his assignment with other banks, but really postponed them in payment to debts exceeding in amount $30,000; *Held*, in an action by the bank against the indorser, that the bank was not equitably estopped by the agreement from pursuing the indorser. inasmuch as the condition of the agreement had not been fairly performed by the maker, although without fault on the part of the indorser.

ASSUMPSIT to recover the amount of a promissory note for $2,000, made by Zachariah Allen, and dated on the 7th day of August, 1858, payable to the order of the defendant, sixty days after date, and indorsed by the defendant for the accommodation of the maker.

The case was submitted to the court, under the general issue, in law and fact; and at the trial it appeared, that in September, 1858, the plaintiffs held, for value, three notes, including the note in suit, for $2,000 each, made by Zachariah Allen; one indorsed by the defendant, and the other two indorsed by Philip Allen & Sons, — a firm which had failed about a year before; that the maker, Zachariah Allen, having stopped payment, and being about to make a voluntary assignment, in trust, for the benefit of his creditors, came with the defendant to the president of the plaintiff bank, and proposed to him, that if the bank would release the defendant, as indorser of the note now in suit, they should be preferred, in the first class of his assignment, for their whole debt of $6,000, with the other banks;, telling him, that if the bank did not accept the proposition, he should prefer the defendant for the amount of his indorsement, and put the other two notes in a class in the assignment which would probably draw no dividend; that the president of the plaintiff bank told Mr. Allen, that he had no

authority to accept his proposition without authority from the directors, and asked him what he meant by the first class in his assignment? to which the reply was, that it was the first thing preferred in the assignment; whereupon the president told him that he would consult the directors and give an answer the same day, which he did, informing him that he had consulted the directors, and assuring him, that if he would carry out what he proposed, the bank would discharge the defendant as indorser, and shortly after, meeting the defendant, gave him the same conditional assurance; that the ·next day the defendant called at the plaintiff's banking room, and requested their cashier to release his name .from the paper, and insisted that he should do so, but was told by the cashier "that he had no authority to give him the release, and could not do it;" that the next day the president of the bank; meeting the defendant, asked him "why he had called at the bank and asked the cashier to release his name from the paper?" and then told him, "that his name would not be released from the paper, until the assignment was on record, and Mr. Allen has carried out what he had agreed to do." After this, and on the 30th day of September, 1858, Zachariah Allen executed his assignment; the first direction in which, relating to the appropriation by the assignees of the proceeds of the assigned property, was as follows : —

" After paying themselves a reasonable compensation for their services, as well as all counsel fees and attorneys' fees due from me, the expenses of this deed of trust, and all charges attending the management and preservation of the property, and the execution and carrying into effect the trust hereby created, — to pay firstly, out of funds on hand and out of the first proceeds of the stock in said mills and other property hereby assigned, according to the terms of purchase of said stock of cotton as nearly as may be thereto, the balances due on book account to Messrs. King & Glezen and Resolved Waterman for cotton bought of them respectively, since July 14th, 1858, (which are not yet payable,) and the balances due as wages for work, labor, or personal services rendered and actually done by persons in my immediate employ as superintendents,

clerks, laborers, teamsters or otherwise, at or about the business of said cotton mills, or in the counting-room, said personal services and labor having been mostly paid for in full to the 15th of August, 1858 ; — then a balance of account due Messrs. William A. Robinson & Co. for oil and starch delivered me since the 11th day of September, 1857, not fully paid for ; and the balance due the Providence Dyeing, Bleaching and Calendering Company for bleaching goods delivered me since said 11th day of September, 1857.

" And whereas, with the purpose and expectation of continuing my business under an extension, I have been induced to renew old obligations by new notes on time to a large amount, given not only for my own paper, but also for my liabilities as indorser and otherwise on the protested paper remaining unpaid of other parties, which said paper is still outstanding as collateral to my said new notes ; and whereas, it is my general purpose and intention in this assignment to prefer debts originally and exclusively my own to those which other parties as principals were originally obligated to pay, it is hereby further provided, that after paying in full the debts and claims against me above recapitulated and first described and specified as debts to be paid in full as aforesaid, the residue of the proceeds of all such sales and collections shall be applied to the payment of the following described classes of debts or claims against me, in the order and manner, and on the conditions hereinafter specified, viz."

The assignment then went on to divide the debts of the assignor, by description of their character or origin into three classes, preferring them in that order, — the holders of the two first of which, as the condition upon which they were to take any benefit under the assignment, were to release the assignor on or before the 31st day of December, 1858 ; the *third* and last class, as named in the assignment, consisting of all the debts of the assignor not included in the two first classes, or of which, if so included, no release should by that time be executed.

The notes held by the plaintiffs, including the note in suit, were all included, with those held by other banks, in the first

26 *

class, nominally preferred in the assignment, but were, in fact, postponed in payment to debts of the assignor amounting to $31,415.16, which were, under the clause of the assignment, above extracted, to be paid in full, before the nominal classification, in the order of preference of the debts embraced by the assignment, commenced.

The plaintiffs had declined to come in under the assignment, or to execute a release of their claims. The assigned property, it was proved, in addition to paying the claims preferred in full, would pay about thirty per cent. upon claims, nominally in the first class of the assignment, of which the holders had executed a release.

*Knowles*, for the plaintiffs.

*Hart*, for the defendant.

BOSWORTH, J. The defence in this case is, that there was an agreement on the part of the plaintiff to release the defendant. The proof shows that Zachariah Allen was the maker of three notes, payable to the Whatcheer Bank, each for the sum of $2,000, on one of which the defendant in this suit was indorser. A short time before the failure in business of said Allen, he, desiring to have his indorser secured, went to the bank in company with the defendant and made a proposition, that if the bank would discharge the defendant from payment of the note, the three notes held by the bank should be put in the first class of preferred creditors in the assignment which the said Allen was about to make. At the same time it was stated, that unless the proposition was acceded to, the said Allen would feel bound to secure the defendant; and in that case would put the said notes in another class in his assignment. The bank acceded to the proposition. No release was however executed to the defendant; and Allen made his assignment, placing the notes of the bank in a class of preferred creditors denominated the first class; though the claims of this class were in fact postponed to a class of creditors whose claims were to be first paid in full, and amounted in the aggregate to about $31,000.

We do not see how this defence can avail to discharge the defendant. His liability as indorser of the note was fixed;

Whatcheer Bank *v.* Cushing.

and no release was in fact executed. If the plaintiffs made an agreement with Mr. Allen of the nature set up, it could avail the defendant in this suit only on the ground of an estoppel, since his liability as indorser had become fixed and no release had actually been executed. The agreement to release was made with Allen on the faith that the plaintiff's three notes should be put in the first class of preferred creditors' claims. The class in which they were put was denominated in the assignment, class first; but the fact, that a class of creditors whose claims in the aggregate amounted to the large sum of $31,000, were preferred to this class, and were to be paid in full, before anything could be received by this first class, renders this denomination a misnomer. It appears by the testimony of the president of the bank, that when the proposition was made to put the three notes in the first class with the other banks, Mr. Allen was asked what he called the first class; if it was the first thing preferred in the assignment? and he said it was. It also appears by the testimony of the same witness, that prior to the assignment of Allen the defendant called upon the bank and asked to have his name released from the paper; and that the bank answered that his name could not be released from the paper until the assignment was on record, and Mr. Allen had carried out what he had agreed to do. In this state of proof the defendant had no reason to expect that the plaintiffs would discharge him from the note, unless the three notes were put in a class of claims first preferred in the assignment of Mr. Allen. This we think was not done in the manner in which the plaintiffs did understand, and had a right to understand, that it should be. They hold the note, therefore, unaffected by the agreement, and must have judgment for the amount of it, with interest and costs.